UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SAMUEL PAUL RILEY,

    Defendant.
_____/

Case No. 20-20330
Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS**

On July 29, 2020, Defendant Samuel Paul Riley was indicted by a grand jury with one count of possession with intent to distribute cocaine, one count of possession of a firearm in furtherance of a drug conspiracy, and one count of felon in possession of a firearm as a result of a traffic stop in Saginaw, Michigan. ECF No. 1.

On December 13, 2020, Defendant filed a motion to suppress the evidence produced during the traffic stop. ECF No. 17. The Government responded on January 19, 2020. ECF Nos. 19, 20. An evidentiary hearing was conducted on February 17, 2021 using a videoconference platform with the consent of Defendant. The Motion was taken under advisement. ECF No. 21. For the following reasons, Defendant's Motion to Suppress will be granted.

**I.**

The following discussion reflects the Court's findings of fact based upon its assessment of the evidence during the hearing, including the dash cam video.

On July 9, 2020, Defendant Riley was driving a vehicle in Saginaw, Michigan. Riley did not have his seat belt on. Michigan State Police Trooper Paul Arrowood wrote in his police report (and testified to the same), "[A]s I passed the vehicle, I observed Riley reaching down

toward the floorboard of the vehicle and moving both of his arms in what appeared to be an attempt to conceal an unknown item(s)." ECF No. 17-1 at PageID.54. After turning his patrol vehicle around (so that he was behind Defendant Riley's vehicle), he also noticed that Defendant Riley's vehicle did not have a license plate. *Id.*

Trooper Arrowood initiated a traffic stop of the vehicle. Defendant pulled his vehicle into a parking spot in front of the Blue Diamond liquor store. Trooper Arrowood parked his patrol vehicle immediately behind Defendant's vehicle and walked to the driver side window. Trooper Hatt approached the passenger side of the vehicle. Defendant informed Trooper Arrowood that he had recently purchased the vehicle. He also explained that he "has his permit" and showed Trooper Arrowood a Michigan identification card. After Defendant admitted that he did not have a driver's license, Trooper Arrowood asked Defendant to step out of the vehicle. Trooper Arrowood immediately handcuffed Defendant, explaining "you aren't going to jail;" the handcuffs are "just until we figure out what's going on." Dam Cam Video, 1:20 – 1:33. Defendant consented to a search of his person for weapons. When asked if there is a gun in the vehicle, Defendant responded, "[N]ot that I know of." *Id.* at 2:00 – 2:33. Trooper Arrowood then directed Defendant, while handcuffed, to sit on the bumper of the patrol vehicle. *Id.* at 2:50 – 3:04.

Trooper Arrowood proceeded to search the vehicle, beginning with the driver's seat. Less than 20 seconds after beginning his search, Trooper Arrowood found a .22 caliber handgun and immediately moved Defendant to the backseat of the patrol vehicle. *Id.* at 3:04 – 3:40. After securing the gun, Trooper Arrowood continued to search Defendant's vehicle. *Id.* at 3:40 – 7:30. At the 7:30 minute mark in the video, an employee of Blue Diamond Liquor exited the store and asked if the police were leaving Defendant's vehicle in the parking lot. Trooper Arrowood

responded, "[W]e're not going to leave it here . . . we'll either have him come get somebody or we'll tow it." *Id.* at 7:31 – 7:43. After the conversation, Trooper Arrowood continued his search of the vehicle for another six to seven minutes. It is unclear from the video, as well as the briefing, what time the tow truck was called.

## II.

Defendant offers two arguments in support of his Motion to Suppress: (1) that the search was an illegal search incident to arrest and (2) that the search does not meet the requirements for an inventory search. ECF No. 17. In response, the Government concedes the search is not a valid search incident to arrest. ECF No. 20 at PageID.65. However, the Government argues that Trooper Arrowood conducted a valid inventory search incident to his decision to impound the vehicle. The Government also contends the search was a proper protective search under *Michigan v. Long*. *Id.*

The Fourth Amendment to the U.S. Constitution states "[t]he right of the person to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." However, there are several exceptions to the warrant requirement. The two exceptions at issue here are the inventory search and protective search exceptions.

### A.

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* at 372. The Supreme Court explained that inventory searches prior to impounding a vehicle are

appropriate where the police follow standardized procedures and there is no evidence that the police "acted in bad faith or for the sole purpose of investigation." *Id.* at 372–73.

The Government persuasively argues that the police could impound Defendant's vehicle. Defendant admitted that he did not have a valid driver's license so he could not legally drive the vehicle. In addition, there was no license plate on the vehicle and the vehicle was not properly insured. Based upon these facts, Trooper Arrowood could have conducted a proper inventory search of the vehicle prior to impounding the vehicle.

Defendant argues that "Trooper Arrowood was in no way attempting to protect the property of the Defendant [but instead his] intent was to discover evidence of a crime." ECF No. 17 at PageID.51. He continues, the "Troopers actions and words he used in his own police report [i.e., "Due to my observations of RILEY [sic] movements inside of the vehicle upon seeing Troopers, and the fact that RILEY was driving without a driver's license, I conducted a probable cause/inventory search of the vehicle."[1]] demonstrate his level of determination to search the Defendant's vehicle regardless of the Constitution and our current case precedent." *Id.* at PageID.52. Trooper Arrowood acted on his belief that Riley was hiding a weapon, correctly as it turned out, but did so without evidence amounting to probable cause.

Immediately after asking Defendant to step out of the vehicle, Trooper Arrowood handcuffed Defendant, told him he was not being arrested, moved Defendant away from his vehicle, and then searched the driver seat of the vehicle. However, more than four minutes into the search of the vehicle, Trooper Arrowood informed a Blue Diamond liquor store employee that either the vehicle would be impounded or a third party would come and drive the vehicle

---

[1] ECF No. 17-1 at PageID.55.

away. This admission undercuts Trooper Arrowood's argument that the search of the vehicle was incident to his decision to impound the vehicle.

**B.**

The Government offers a second theory for a warrantless search of the vehicle, a protective search under *Michigan v. Long*. In *Michigan v. Long*, the Supreme Court held "that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1050 (1983) (internal quotation omitted).

In *Long*, the suspect was already outside the vehicle when officers arrived, he failed to respond to officer's requests, appeared to be under the influence, and "turned from the officers and began walking toward the open door of [his] vehicle." *Id.* at 1036. The Supreme Court explained "the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile." *Id.* at 1051–52. They explained, the suspect may "break away from police control and retrieve a weapon from his automobile" or "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.*

In the instant case, Trooper Arrowood asked Defendant to step out of the vehicle, handcuffed him, searched him for weapons (with his consent), and moved him to the front bumper of the police vehicle. Because Defendant was restrained, it was unlikely that he could break away from police control to retrieve a potential weapon from the vehicle.

Further, Trooper Arrowood gave no indication that he planned to allow Defendant back into the vehicle at the time he began his search, especially because Defendant did not have a driver's license and the vehicle had no license plate. Thus, a *Michigan v. Long* protective search does not justify Trooper Arrowood's search of the vehicle.

### III.

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress, ECF No. 17, is **GRANTED**.

Dated: March 19, 2021             s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge